RYAN, Circuit Judge,
dissenting.
While I agree that we should decide this appeal by reaching the abandonment issue, I respectfully disagree with my colleagues’ conclusion that the defendant, Terri Leigh Eden, did not abandon the suitcase in the trunk of her car when she walked away from the scene of the traffic stop. In my judgment, the government established by a preponderance of the evidence that Eden’s statements and her behavior during the traffic stop would lead a reasonable person in Officer Polich’s circumstance to believe that Eden was relinquishing her privacy interest in the suitcase in the car’s trunk in an attempt to distance herself from its illegal contents. See United States v. Basinski, 226 F.3d 829, 836 (7th Cir.2000).
I would reverse the district court’s order granting Eden’s motion to suppress and remand with instructions to the district court to consider whether the search and seizure of Eden’s rental car violated her rights guaranteed by the Fourth Amendment.
I.
The facts of this interesting and unusual case are adequately detailed in the majority opinion. What they mean in terms of the so-called abandonment exception to the Fourth Amendment prohibition against the warrantless search of the contents of a suitcase found in the trunk of an automobile that we presume for now, was lawfully seized, is what divides my colleagues and me. We are significantly benefited by having viewed a videotape (with partial audio) of the entire episode of Eden’s encounter with Officer Polich, from the time he stopped her car for a speeding violation *427 at about 1:50 a.m. on the dark, rural highway in Mineral County, Montana, until, almost 40 minutes later, with the officer’s permission, she walked away from the scene above, along the shoulder of the highway into the night. Officer Polich knew, but Eden did not, that there was a camera mounted on the police car and a microphone on Polich’s person, recording the whole episode.
Our duty, as I have said, is to determine as best we can, not whether we think Eden walked away from the car and the suitcase in its trunk, with an intention permanently to relinquish her privacy interest in the suitcase and its contents, but whether a reasonable police officer, in Officer Polich’s circumstance, given his professional experience and his extensive interrogation of Eden at the side of the highway, would reasonably think so.
As always, when state of mind is to be deduced from a body of circumstantial evidence, we look to the circumstances as a whole; we do not assess separately, the individual increments of conversation and behavior that comprise the whole, counting up the number of increments that point in one direction and the number that point in another, and award the prize to the side having the most “points.”
It is important to recognize that, strictly speaking, it is not Eden’s state of mind we are to determine; that is, whether she intended to abandon the suitcase. It is the state of mind of the fictional “reasonable police officer” in Officer Polich’s circumstance, that we seek to discern. The question is whether he or she would reasonably have concluded that Eden intended to give up her privacy rights in the suitcase and its contents.
Officer Polich testified that Eden seemed nervous when he approached her after stopping her car for speeding. He said she hesitated before answering his basic questions about the origin and destination of her travel. He said he suspected illegal activity, and called for back-up assistance.
After advising Eden at length about her alleged speeding, and the requirements of Montana law for posting bond, Officer Polich handed Eden the speeding ticket, and Eden handed him the bond money. That business done, Officer Polich made repeated, courteous attempts to obtain Eden’s consent to search the car and her personal belongings. Eden repeatedly refused to permit the officer to search the car, which ensured that Eden’s belongings anywhere in the vehicle remained private. Officer Polich then asked his dispatcher to advise the car rental company that an “unauthorized” person, Eden, was driving the rental car and inquire whether the rental company wished him to confiscate the vehicle. Advised by his dispatcher that the rental company did ask that he confiscate the car, Officer Polich told Eden he was going to have her car “towed.” Eden inquired about getting a ride to the next town, which Polich told her was about seven miles away. Polich told her he would drive her to the next town, but that for his own safety, he would have to search her and any belongings she brought into the car with her. Eden then asked for permission to retrieve her cellular phone from inside the car, and Officer Polich responded: ‘You can get your phone. You can get whatever you need. But like I said, before you come into my car I’m going to need to check your purse and everything.”
When Eden reentered the car to retrieve her phone, Officer Polich noticed several empty whisky bottles in plain view inside the vehicle. He directed Eden to step out of the car again, and submit to a “field sobriety test.” After concluding that Eden was not intoxicated, Officer Polich *428 made it clear that he had taken possession of her car at the behest of the rental company, but that she was “free to go.” He stated: “Basically we’re just waiting for the tow, so why don’t you just go and grab your stuff real quick and we’ll get going.” Eden retrieved her purse, her cell phone, and a small rolling suitcase from the passenger compartment of the car, but nothing from the trunk. Officer Polich explained to Eden, once again, that she was free to walk up the shoulder of the highway, alone, in the middle of the night, but if she wished to accept his invitation to drive her to the next town, he would have to search her belongings. While Eden was thinking about Officer Polich’s conditional invitation and before she answered, he emphasized that the nearest taxi was 45 minutes away, and the nearest town was seven miles away. The videotape captures Eden silently pondering the situation. After reflecting on the matter, and, despite her initial inquiry about a ride, Eden declined Officer Polieh’s request to search her belongings and began to walk up the highway, alone, at approximately 2:30 a.m., and disappeared into the darkness, making very clear that she intended to keep the contents of her purse and the small rolling suitcase private.
Eden spent approximately 40 minutes, at the side of the road, with Officer Polich. Despite her careful deliberation before refusing Officer Polieh’s requests to search her car and her personal belongings — cell phone, small rolling suitcase, and purse— Eden did not mention the suitcase in the trunk of the car or make any attempt to retrieve it. Given Eden’s firm and repeated refusal to consent to Polich’s several requests to search her purse and small suitcase, and given further her decision to begin walking up the highway alone in the middle of the night, a reasonable person in Officer Polich’s circumstance would have concluded that Eden meant to maintain her privacy in her purse and rolling suitcase, and to distance herself from the car and anything in it, including the suitcase full of cocaine in the trunk.
II.
In United States v. Sanders, 719 F.2d 882 (6th Cir.1983), we held that the defendant did not abandon her suitcase when she left an airport without retrieving the suitcase from the baggage claim area. We explained that Sanders never affirmatively disclaimed the suitcase, and, “[m]ore important, she consistently refused to consent to a search of the suitcase.” Id. at 886. We also noted that Sanders explained to the agents that she had not claimed the suitcase because she was not going straight home. Id. Based on those facts, we concluded that one could properly infer from Sanders’s words and actions that she continued to indicate that she had a privacy interest in the suitcase, and therefore, she did not abandon it. Id.
But, in United States v. Oswald, 783 F.2d 663 (6th Cir.1986), we held that the defendant abandoned a suitcase when he left it inside an unlocked, burning car on the side of an interstate highway. Id. at 663. Oswald left the scene with a passerby, did not report the fire, and did not return to the scene within a reasonable time to retrieve the car or its contents. Id. at 664, 666. Distinguishing Sanders, we explained that a person who leaves a suitcase in a baggage claim area in an airport has a reasonable expectation that the suitcase will be locked up and kept safe until he returns with the claim check, but that Oswald had no such reasonable expectation of privacy when he left his suitcase in a burning car on the side of the highway. Id. at 667. We also explained that Oswald could have retained his privacy interest in the suitcase by remaining on *429 the scene, or returning to the scene within a reasonable time to tell the officers to leave the suitcase alone. Id. at 668.
Of course, this case is neither Sanders, nor Oswald; it presents its own unique set of facts. But, to the extent that it matters, I think our facts are more analogous to those in Oswald than those in Sanders.
Unlike the defendant in Sanders, Eden did not leave the cocaine-laden suitcase in a known, secure location such as a baggage claim area. When she left the car and began walking up the highway, she had no idea where the car would be taken or by whom. She knew only that the car would be towed and eventually returned to the rental car company. She did not know whether the car would first be towed to a police impound lot or some other place, and she had no idea where the rental car company would direct it ultimately be taken.
In my judgment, what occurred during and following Eden’s confrontation with Officer Polich provides more than sufficient basis for this court to conclude that a reasonable police officer in Officer Polich’s circumstance, evaluating the totality of what occurred, would conclude that Eden was abandoning whatever legitimate expectation of privacy she might have had in the suitcase in the car’s trunk, when she took some of her personal belongings and walked away from the scene of the traffic stop into the darkness of the night. See United States v. Tolbert, 692 F.2d 1041, 1044-45 (6th Cir.1982).
III.
I think these facts establish by a preponderance of the evidence that Eden relinquished her privacy interest in the suitcase in an attempt to distance herself from the 23 kilograms of cocaine inside it, but what’s far more important, I think a reasonable person in Officer Polich’s shoes would think so, too.
Therefore, I would reverse the district court’s order granting Eden’s motion to suppress and remand with instructions to the district court to consider whether the search and seizure of the car violated Eden’s Fourth Amendment rights.